## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Oscar Montoya,<br>IDOC #M-16884,<br><br>        Plaintiff,<br><br>v.<br><br>Jacqueline F. Mitchell, DDS,<br><br>        Defendant. | No. 1:17-cv-01796<br><br>Honorable Nancy L. Maldonado |

### MEMORANDUM OPINION AND ORDER

Plaintiff Oscar Montoya brings suit under 42 U.S.C. § 1983, alleging that Defendant Dr. Jacqueline Mitchell, the dental director at Stateville Correctional Center, violated his Eighth Amendment rights when she mishandled the filling of his tooth and was deliberately indifferent to his resulting pain. Defendant Mitchell has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Montoya has responded to the motion for summary judgment and filed a motion to strike. Both motions are ripe for review.

The Court will first address the motion to strike because it raises a threshold issue of what evidence should be considered at summary judgment. The Court will then turn to the motion for summary judgment itself. As explained in this Order, Montoya's motion to strike (Dkt. 120) is denied, and Mitchell's motion for summary judgment (Dkt. 113) is granted.

### I.    Plaintiff's motion to strike

Montoya's motion to strike concerns three categories of evidence: (1) dental X-rays, (2) dental records and grievances, and (3) Mitchell's declaration submitted in support of her

motion for summary judgment. Montoya argues that because the dental X-rays were untimely disclosed and the other evidence is not admissible, the Court should strike the records and strike the motion for summary judgment itself as a sanction. (Dkt. 120 at 4–5, 7.)[1] The Court will address each category of evidence in turn.

### A. Disclosure of the March 11 X-rays

By way of background, in January 2019, Montoya filed a motion to compel certain discovery and the Court ordered the Illinois Department of Corrections, then a defendant, to produce Montoya's dental and grievance records. (Dkts. 36, 39.) The Illinois Department of Corrections produced those records, and Montoya's counsel believed the production to be complete. Later, however, Montoya testified at his deposition that before Mitchell performed his dental filling on March 11, 2015, Mitchell took X-rays of him. As a result of this deposition, Montoya's counsel became aware of the existence of X-rays from the March 11 filling ("March 11 X-rays"), which had not been tendered in discovery. Defense counsel did not have the X-rays but located them in the possession of Wexford Health Sources, Inc., as the X-rays had been taken by a dental technician who was a Wexford, not Department of Corrections, employee.

In light of the outstanding March 11 X-rays, the Court reopened and extended discovery for a limited purpose: for Defendant to produce the X-rays, and to allow Montoya to have a dental professional review them and provide an opinion to Plaintiff's counsel. (Dkt. 100.) Thus, as a supplement to initial disclosures, Defense counsel mailed Plaintiff's counsel a hard copy of the March 11 X-rays. The limited discovery was then extended again for the purpose of obtaining the expert's report and allowing for the expert's deposition. (Dkt. 109.) Ultimately, however, there is

---

[1] In citations to the record, page numbers are taken from CM/ECF headers, except when the Court cites deposition testimony, in which case the Court cites the internal transcript page and line number.

no reference to an expert report or deposition in the summary judgment materials, and it appears that the expert did not end up providing a report. (*See* Dkt. 120-1 at 39.)

Plaintiff's counsel had some doubt as to the dates noted on each X-ray and asked Defense counsel whether there was a chain-of-custody document for the X-rays. Defense counsel reached out to a representative from Wexford Health Sources and was informed that there was no chain-of-custody document for the X-rays, but that the records Wexford had provided to Defense counsel were Plaintiff's dental records, as notated on the records.

Plaintiff argues that the late disclosure of the March 11 X-rays, which he calls a "non-disclosure," is not harmless because Plaintiff has been limited in his ability to investigate or raise arguments as to the condition of Plaintiff's teeth. Defendant responds that the late disclosure was substantially justified or harmless. (Dkt. 126 at 5.)

Under Federal Rule of Civil Procedure 26, a party must supplement its initial disclosure or response to requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). Whether a party's production of information is timely "depends on when the party first learned of the information." *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 C 7216, 2021 WL 809734, at *3 (N.D. Ill. Mar. 3, 2021). "[T]he producing party bears the burden of showing that the production at issue was timely." *Id.* To ensure compliance with Rule 26, Rule 37 provides for a sanction: if a party fails to provide information as required by Rule 26(e), the party "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1). In other words, if Mitchell failed to comply with Rule 26(e) in producing the March 11 X-rays, the Court could sanction her by barring the use of the X-rays in her motion for summary judgment unless her failure "was substantially justified or is harmless." *Id.* A district court has broad

discretion in determining whether a Rule 26 violation is justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). In making that determination, a court should consider four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*

Here, the request to sanction Mitchell for the late disclosure of the X-rays is somewhat perplexing, in that neither party substantively discusses the X-rays in the summary judgment briefing, and thus the X-ray disclosure seems to have no bearing on the evidence at issue. In other words, the Court cannot sanction Mitchell by barring her from using the X-rays, because she does not rely on them. In any event, the Court finds that the disclosure of the March 11 X-rays was timely because the parties were not aware of the X-rays' existence until Montoya's deposition, and because Mitchell tendered the X-rays within a reasonable time after learning of their existence. There was thus no violation of Rule 26 for the Court to sanction.

Furthermore, even if Mitchell's production of the March 11 X-rays was untimely, the late disclosure was justified or harmless, and striking either the dental records or the motion for summary judgment would be unwarranted. First, although Montoya argues that he is prejudiced by the failure to comply with Rule 26, in applying the *David v. Caterpillar* factors the Court finds little prejudice. Mitchell does not rely on the X-rays, and Montoya apparently never deposed Mitchell (*see* Dkt. 126 at 3 ¶ 11), so he has not lost an opportunity to question her about the X-rays. Second, any prejudice was cured, because discovery was reopened specifically to allow Montoya to have an expert examine the X-rays, and an expert apparently did so. (*See* Dkt. 108 at 3.) Montoya's argument that not having the X-rays limited his ability to investigate or raise arguments about the condition of his teeth is therefore unavailing, as he was given ample

opportunity to pursue further discovery. Third, the Court finds no disruption to trial because a trial date has not been set. Fourth, the Court finds no bad faith: it was Wexford, not Mitchell, that possessed the X-rays, and there is no indication that Mitchell intentionally withheld them. Mitchell's counsel first obtained the X-rays after Plaintiff's counsel alerted her to their existence, then mailed them to Plaintiff's counsel, and followed up with Wexford about whether there was a chain of custody document. (*See* Dkt. 120-1 at 28–42.) The Court thus finds that even if Mitchell's disclosure of the X-rays was untimely, the late disclosure was substantially justified or harmless.

Even if the Court were to find that the late disclosure should be sanctioned under Rule 37, an appropriate sanction would be to bar Mitchell from using the March 11 X-rays in the motion for summary judgment and at trial, not to bar Mitchell from using all dental records (which were timely produced) or to strike the motion for summary judgment itself. The motion to strike based on the late disclosure of X-rays is therefore denied.

### B.  Authentication and foundation for dental and grievance records

Montoya next argues that the dental records and motion for summary judgment should be stricken because Mitchell relies on the dental and grievance records in her motion for summary judgment but fails to authenticate them or lay a proper foundation for their admission. Montoya makes the same objections to authentication and foundation, as well as a hearsay objection, in his response to the motion for summary judgment and in his response to Mitchell's Local Rule 56.1 statement of material facts. (Dkt. 118 at 3–5; Dkt. 119.)

The Court overrules Montoya's objections to authentication, foundation, and hearsay. Although Montoya faults Mitchell for failing to authenticate the dental records and grievances, he does not actually contend that the documents are not authentic. Indeed, Montoya himself cites the grievance record in his statement of additional facts and attaches the dental and grievance records

as an exhibit. (*See* Dkt. 119 at 8–9 ¶¶ 10, 16; Dkt. 119-1.) In addition, Montoya's response brief relies on the dental records and grievances to argue that Mitchell knew that Montoya was in pain. (Dkt. 118 at 9–10.) In other words, Montoya at times relies on the very same records to which he objects.

In addition, "[c]ourts in the past have frowned upon mere *pro forma* objections based on authenticity without any indication that the evidence may not in fact be genuine." *Quinn v. Wexford Health Sources, Inc.*, No. 3:17-CV-00669-NJR, 2020 WL 888048, at *2 (S.D. Ill. Feb. 24, 2020) (declining to strike prison medical records in the absence of actual doubt as to their authenticity), *aff'd*, 8 F.4th 557 (7th Cir. 2021). At the summary judgment phase, the Court may consider unauthenticated documents "if it appears that they are capable of authentication at trial." *Remmer v. Wexford Health Sources, Inc.*, No. 19-CV-00420-NJR, 2021 WL 535542, at *4 (S.D. Ill. Feb. 12, 2021); *see also Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (noting that summary judgment materials may be considered "so long as *facts* therein could later be presented in an admissible form" at trial) (citing Fed. R. Civ. P. 56(c)(2)–(4)); *Boyce v. Wexford Health Sources, Inc.*, No. 15 C 7580, 2017 WL 1436963, at *3 (N.D. Ill. Apr. 24, 2017) ("[F]ederal courts routinely consider unauthenticated documents on motions for summary judgment . . . [when] such documents are capable of reduction to admissible, authenticated form.") (citation omitted). Medical records, which are "exceptions to the hearsay rule," are generally "admissible at trial," and there is no indication that the records here are not capable of being admitted at trial. *Boyce*, 2017 WL 1436963, at *3 (citation omitted); *Taylor v. Dart*, No. 18-CV-1078, 2022 WL 4483908, at *2–3 (N.D. Ill. Sept. 27, 2022) (denying motion to strike evidence because although medical records would need foundation at trial, their content could be presented at trial and plaintiff himself relied on them).

Here, the Court is satisfied that the dental records and grievances, or the facts therein, are capable of admissibility at trial and are thus properly considered as part of the summary judgment record. Therefore, in the summary judgment materials, where Montoya objects to Mitchell's statement of material facts based on authentication and foundation, those objections are overruled.

### C. Mitchell's declaration

Finally, Montoya argues that Mitchell's declaration should be stricken for failing to comply with the requirements of 28 U.S.C. § 1746. Under § 1746, parties may provide evidence in the form of declarations instead of sworn affidavits, as long as the declarations are signed and dated and the declarant verifies that her statements are "true and correct" and given "under penalty of perjury." 28 U.S.C. § 1746. "Statements that fail to comply with these requirements are inadmissible." *Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 841 (N.D. Ill. 2010), *aff'd sub nom. Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011). "Compliance with 28 U.S.C. § 1746 is mandatory and fundamental, not a 'non-substantive' requirement." *Davis*, 685 F. Supp. 2d at 842 (citations omitted).

Here, Montoya is correct that Mitchell's original declaration does not comply with 28 U.S.C. § 1746 because it is not dated and does not indicate that the statements are given under penalty of perjury. (Dkt. 115-4.) Mitchell argues that the original declaration is substantially compliant, but in the alternative she requests leave to submit an amended declaration that fully complies with § 1746, which she attaches as an exhibit to her summary judgment reply brief. (Dkt. 126 at 8–10; Dkt. 127-1.) The Court finds that Mitchell's amended declaration complies with § 1746, as it is dated and states, "I declare under penalty of perjury that the foregoing is true and correct." (Dkt. 127-1 at 3.) In light of Mitchell's prompt curing of the declaration's deficiencies, the Court overrules Montoya's objection and grants Mitchell leave to submit the amended

declaration in place of the original. Although there are a few minor differences between the original and amended declarations, the Court does not rely on any of those differences in its summary judgment analysis and finds them immaterial. The amended declaration (Dkt. 127-1) is thus part of the summary judgment record.

In sum, Montoya's motion to strike is denied, and the dental records, grievance records, and Mitchell's amended declaration will be considered part of the summary judgment record. The Court will now consider Mitchell's motion for summary judgment.

## II. Defendant's motion for summary judgment

### A. Background

The facts stated here are based on the parties' Local Rule 56.1 statements of material facts (Dkt. 119)[2] and evidence attached thereto. The Court also has discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Because Montoya's response to Mitchell's statement of material facts contains authentication and foundation objections that have now been overruled, where Montoya disputes a fact solely on the basis of authentication and foundation, that fact will now be deemed undisputed. *See* N.D. Ill. L.R. 56.1(e)(2) ("In the event that the objection [to the statement of material facts] is overruled, the failure to admit or dispute an asserted fact may constitute a waiver."). In addition, Montoya filed a statement of additional material facts pursuant to Local Rule 56.1(b)(3), but Mitchell did not respond to it; thus, Montoya's additional facts will be deemed undisputed, with the exception of any where Montoya's cited evidence does not actually support his assertion. *See* N.D. Ill. L.R. 56.1(d)(2) ("Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page

---

[2] The Court will cite Dkt. 119 because this filing contains in a single document Mitchell's Local Rule 56.1 statement of material facts, Montoya's response to Mitchell's statement of material facts, and Montoya's statement of additional material facts.

number, that supports it. The court may disregard any asserted fact that is not supported with such a citation."). Thus, unless otherwise noted, the following facts are undisputed.

Plaintiff Oscar Montoya is currently incarcerated at Pinckneyville Correctional Center in Illinois. (Dkt. 119 at 1 ¶ 1.) Montoya was previously incarcerated at Stateville Correctional Center ("Stateville") in Illinois between November 7, 2012, and November 18, 2015. (*Id.* at 2 ¶ 6.) The events giving rise to Montoya's claims occurred at Stateville in 2015. (*Id.* at 2 ¶ 5.)[3]

Defendant Dr. Jacqueline F. Mitchell is a licensed dentist in the state of Illinois. (*Id.* at 1 ¶ 2.) Dr. Mitchell was employed by the Illinois Department of Corrections as a dentist at Stateville until 2017, when she retired. (*Id.*)

While at Stateville, Montoya first requested to see a dentist in February 2015 for immense pain that he had been experiencing for a couple of weeks. (*Id.* at 2 ¶ 7, 8 ¶ 1.) Mitchell saw Montoya in the dental clinic on March 11, 2015, and made a filling for Montoya's tooth #17 for very deep tooth decay. (*Id.* at 3 ¶ 9.) During that procedure, Montoya observed Mitchell talking with the nurses, turning around to talk with them, and laughing. (*Id.* at 8 ¶ 2.) Mitchell asserts that after the procedure on March 11, 2015, she advised Montoya that he might experience pain with tooth #17 because of the depth of the filling; but Montoya asserts that he does not remember having any discussions with Mitchell when the procedure was over. (*Id.* at 2 ¶ 10, 8 ¶ 3; Dkt. 115-1 at 20:13–15.) Mitchell did not provide Montoya with any medication, giving him only a towel for blood and no instructions regarding the towel. (*Id.* at 8 ¶ 4.) Montoya experienced pain immediately after the procedure, but he believed that pain was normal; and on a scale of one to

---

[3] Montoya disputes this fact, arguing that dental records show that the tooth at issue in this case—his back molar, tooth #17—needed to be filled as early as February 2014. (Dkt. 119 at 2 ¶ 5.) But, because Montoya does not bring an Eighth Amendment claim for deliberate indifference based on a delay of treatment between 2014 and 2015, the Court does not consider Montoya's dispute here to be a "genuine dispute as to [a] material fact." Fed. R. Civ. P. 56(a).

ten, Montoya's pain was at a seven during the day, but rose to ten during the night. (*Id.* at 8 ¶¶ 5–6.)

After receiving the filling on March 11, 2015, Montoya experienced pain and could not chew his food much, and he could only sleep a few hours at a time. (*Id.* at 8 ¶¶ 7–8.) He submitted multiple requests for services at the dental clinic, but multiple appointments were rescheduled. (*Id.* at 3 ¶ 11.) Specifically, Montoya submitted a request for services at the dental clinic on April 14, April 17, April 28, May 26, and June 9, 2015, but his appointments on April 26, April 29, and May 25 were rescheduled due to institutional lockdowns, and his appointments on April 22 and May 22 were rescheduled due to staff shortages. (*Id.*) He also filed a grievance on April 13, 2015, complaining of constant pain and that he could hardly sleep. (*Id.* at 8 ¶ 9; Dkt. 119-1 at 21.) Montoya claims that he experienced constant pain between March 11, 2015, when his tooth was filled, and September 28, 2015. (Dkt. 119 at 4 ¶ 14.)

Montoya had the ability to purchase pain medicine from the commissary after the March 11 filling, but he never used the available funds in his trust fund account to do so. (*Id.* at 5 ¶¶ 16–17.) Instead, Montoya used the funds in his account to purchase coffee, batteries, and food from the commissary. (*Id.* at 5 ¶ 18.) Montoya chose not to purchase medicine from the commissary because he has issues with his liver and is unable to take certain pain medications, or must take them in small doses to avoid liver damage. (*Id.* at 9 ¶ 15.)

On May 11, 2015, Montoya was seen at the dental clinic by another treating dentist, Dr. Karen Gregory, and he was prescribed Motrin 400mg for pain. (*Id.* at 4 ¶ 12; 8 ¶ 11.) At that May 11 appointment, Dr. Gregory performed another filling and asked Montoya if he wanted his tooth extracted. (*Id.* at 8 ¶ 11.) Montoya did not want to have his tooth extracted because he only had a

few teeth left. (*Id.* at 9 ¶ 20.) The Motrin did not do much, if anything, to alleviate Montoya's pain, and he continued to experience pain after the appointment on May 11, 2015. (*Id.* at 9 ¶¶ 13–14.)

Montoya had another scheduled appointment on June 19, 2015, but he was marked as a "no show" and did not attend, although Montoya asserts that his absence resulted because he was never called or transported to the appointment. (*Id.* at 2 ¶ 12.)

Montoya submitted a grievance on April 13, 2015, in which he wrote that Dr. Mitchell "did something [wrong to] my gums because[] I am still in pain and I am in constant pain every single day. It hurt me so bad that I can hardly sleep." (Dkt. 119-1 at 21–22.) That grievance was received in the Grievance Office on June 3, 2015, and then was received in the Dental Department on June 22, 2015. (Dkt. 119 at 9 ¶ 16) (citing Dkt. 119-1 at 18–19). In response, Mitchell prepared a memorandum to the Grievance Officers that summarized Montoya's dental records. (Dkt. 119 at 9 ¶ 16.) Mitchell's memorandum was dated June 22, 2015, and stated that Montoya "was seen on 5/11/2015 and given Motrin 400mg for pain," was "a no show for his appointment on 6/19/2015," and "currently has an appointment on 6/24/2015." (Dkt. 119-1 at 20.) Montoya was indeed seen again at the dental clinic by another treating dentist on June 24 (apparently Dr. Gregory, although Montoya does not recall the exact date in June), for a follow-up on tooth #17, and was prescribed more Motrin. (*Id.* at 4 ¶ 13, 9 ¶¶ 17, 19.) During either the May or June 2015 appointment, Dr. Gregory told Montoya that Dr. Mitchell, who had performed the first filling, had damaged his nerve. (*Id.* at 9 ¶ 18.) Despite Dr. Gregory prescribing Montoya more Motrin, Montoya still experienced pain. (*Id.* at 9 ¶ 19.)

Montoya was seen by other treating dentists on July 14, August 24, and September 23, 2015, for follow-up and evaluation for an extraction, and Montoya ultimately agreed to have Dr. Mitchell extract his tooth because of the pain he was still experiencing. (Dkt. 119 at 4 ¶ 13, 9 ¶ 21.)

Mitchell extracted the tooth on September 28, 2015. (*Id.* at 9 ¶ 21–22.) Even after having his tooth extracted on September 28, 2015, Montoya is still experiencing pain, including pain in his gums when he chews. (*Id.* at 9 ¶ 22.)

Based on the above, Montoya brings this action against Mitchell pursuant to 42 U.S.C. § 1983 for the botched filling and deliberate indifference to the resulting pain. (Dkt. 75 at 4.) After a period of discovery, Mitchell filed a motion for summary judgment. (Dkt. 113.) Montoya filed a response, and Mitchell filed a reply. (Dkts. 118, 127.)

## B. Legal Standard

### 1. *Summary judgment*

"Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the movant meets her initial burden, then the non-movant "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial."

*Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)).

The record is viewed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *See Anderson*, 477 U.S. at 255; *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and internal quotation marks omitted). In other words, a mere "scintilla of evidence" supporting the non-movant's position does not suffice to defeat summary judgment. *Anderson*, 477 U.S. at 252.

### 2. *Eighth Amendment deliberate indifference*

The Eighth Amendment protects prisoners from cruel and unusual punishment, which includes a guarantee of "adequate medical care." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must show that (1) he had an objectively serious medical condition, and (2) "the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citations omitted). On the first prong, a medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, a defendant must have acted with "a sufficiently culpable state of mind," meaning the defendant "must know of the serious risk to the prisoner's health . . . and they must also consciously disregard that risk." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). The standard is subjective. *See Holloway v. De. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Negligence and even gross negligence are insufficient to meet this standard. *Whitfield v. Spiller*, 76 F.4th 698, 714 (7th Cir. 2023) (citing *Farmer v. Brennan*, 511 U.S. 825, 829 (1994)). Rather, the plaintiff must show a subjective awareness of the risk, "which amounts to a standard of criminal recklessness." *Whitfield*, 76 F.4th at 714.

Medical professionals are "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded" under the circumstances; thus a medical professional "may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). In addition, a plaintiff can show deliberate indifference by showing that prison staff "ignored a request for medical assistance, disregarded an obvious risk; . . . or persisted in a course of treatment known to be ineffective." *Ramirez v. Sanchez*, Case No. 15-cv-4787, 2018 WL 2118199, at *11 (N.D. Ill. May 8, 2018) (internal quotation marks omitted). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). Critically, however, "neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference . . . ." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). In the same vein, a plaintiff is "not entitled to demand specific care . . . [or] the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

14

### C.     Discussion

Montoya has based his § 1983 claim on Mitchell's allegedly botched filling on March 11, 2015, and Mitchell's deliberate indifference to Montoya's ensuing pain. The Court will address each topic in turn.

#### 1.     *Filling procedure on March 11, 2015*

Mitchell argues that Montoya's dental issues do not rise to the level of an objectively serious medical condition, and even if they do, there is insufficient evidence of deliberate indifference. (Dkt. 114 at 4–8.) In response, Montoya argues that dental problems are recognized as an objectively serious medical condition, and that Dr. Gregory told Montoya that Mitchell had damaged his nerve. (Dkt. 118 at 6–7.)

Regarding the first prong of the deliberate indifference analysis, dental issues have been established as objectively serious medical conditions. *E.g.*, *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (noting that dental care is "one of the most important medical needs of inmates") (citation omitted); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."). Mitchell argues that the dental issue must be accompanied by pain, and Montoya's pain did not rise to the level of an objectively serious condition. (Dkt. 114 at 5.) In particular, Mitchell argues that Montoya did not submit a sick call slip to be seen at the dental clinic until approximately one month after the filling, and he never purchased medicine at the commissary despite having the funds to do so. (*Id.*)

The Court is not persuaded. First, pain is not required. *See Board v. Farnham*, 394 F.3d 469, 482–83 (7th Cir. 2005) (holding that deprivation of toothpaste for extended period implicated objectively serious medical condition). And even if pain were required, there is sufficient evidence

of pain in the record: Montoya testified that after the March 11 filling, on a scale of one to ten, his pain was between seven and ten after the procedure, and the pain made chewing food difficult and interrupted his sleep. He also testified that he chose not to buy pain medicine at the commissary because his liver condition prohibits him from using certain pain medications. The Court finds that a reasonable jury could credit Montoya's testimony about his pain level and his stated reason for not buying pain medication at the commissary. Thus, viewing the facts in the light most favorable to the non-movant Montoya, there is a genuine dispute as to the level of pain that Montoya experienced, and Mitchell's argument that Montoya's pain level was too low to constitute an objectively serious condition fails.

Nevertheless, the Court still finds that Mitchell is entitled to judgment as a matter of law regarding the March 11 filling on the second prong of the deliberate indifference analysis, because there is insufficient evidence in the record that Mitchell's performance of the filling substantially departed from the accepted professional practice or standard, or that Mitchell consciously disregarded a serious risk to Montoya's health. *See McGee*, 721 F.3d at 480–81; *Johnson*, 433 F.3d at 1010. Montoya asserts that during the March 11 filling, Mitchell was laughing and joking with the nurses during the procedure (Dkt. 118 at 6), and that Dr. Gregory said Mitchell damaged Montoya's nerve during the March 11 filling. (*Id.* at 7.) For some reason, Mitchell does not object to Dr. Gregory's statement as hearsay, so the Court considers it. But even if Mitchell did damage a nerve in Montoya's gums, there is insufficient evidence in the record to show that Mitchell's conduct went beyond negligence or gross negligence. *See Whitfield*, 76 F.4th at 714. There is no evidence in the record, such as an expert report or testimony of a nurse present during the filling, suggesting that Mitchell's performance of the filling substantially departed from the professional standard such that she was not exercising professional judgment, or that Mitchell consciously

disregarded a risk to Montoya's health. Montoya has provided only his own lay person testimony about talking and laughing, which is not sufficient to indicate that Mitchell's conduct substantially departed from the professional standard. Doctors and dentists may often talk and laugh while working, and there is no evidence that such behavior interfered with Mitchell's ability to perform the procedure in any way. Thus, even in the light most favorable to Montoya, his testimony that Mitchell was talking and laughing with the nurses, at times turning around to talk with them, is insufficient.

Montoya also mentions that Dr. Gregory did another filling in the same tooth (Dkt. 119 at 8 ¶ 11), but he does not argue that the second filling is evidence that Mitchell's filling substantially departed from the professional standard, and has not pointed to any record evidence supporting that notion.

Thus, even accepting that Mitchell actually did cause nerve damage during the filling, Montoya has presented only a scintilla of evidence, which would support at most a finding of medical malpractice, and no reasonable jury could find that Mitchell's conduct rose to the level of deliberate indifference. Mitchell is therefore entitled to judgment as a matter of law regarding the performance of the March 11 filling.

### 3.      *Deliberate indifference to Montoya's pain*

Next, the Court finds that Mitchell is entitled to judgment as a matter of law regarding the claim that Mitchell was deliberately indifferent to Montoya's pain. "To recover damages under § 1983, a plaintiff must establish that a defendant was *personally* responsible for the deprivation of a constitutional right." *Whitfield*, 76 F.4th at 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)) (emphasis added). There is insufficient evidence in the record indicating that Mitchell herself ignored "a request for medical assistance," disregarded an obvious

risk, or "persisted in a course of treatment known to be ineffective." *Ramirez v. Sanchez*, 2018 WL 2118199, at *11 (citation omitted). It is true that a delay in treating painful conditions "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d at 753. But there is insufficient evidence in the record to create a genuine dispute that Mitchell herself had a culpable state of mind, or to establish causation between Mitchell's actions and Montoya's prolonged pain.

Mitchell herself was the treating dentist only for the March 11 filling and the September 28 extraction. As for the March 11 filling, Montoya argues that Mitchell's notes indicate that Mitchell was aware Montoya might experience pain due to the depth of the filling. (Dkt. 118 at 6, 8–9.) Yet instead of pain medication, Mitchell gave Montoya only a towel for bleeding. (*Id.*) Montoya argues that the failure to prescribe pain medication rises to the level of deliberate indifference because Mitchell was aware of the likelihood of pain, yet failed to prescribe pain medication. (*Id.* at 9–10.)

The Court is not persuaded. Although Mitchell acknowledged that there might be some pain due to the depth of the decay, there is no evidence that she subjectively knew the pain would be such that pain medication was necessary. Montoya himself initially thought, immediately after the filling, that the pain he was feeling was normal; it was not until later that night that the pain alarmed him. There is also no evidence that Mitchell's failure to prescribe pain medication substantially departed from professional standards.

As for the period of time after the March 11 filling, it is true that Montoya requested treatment multiple times—but again, Montoya has not marshalled evidence indicating that Mitchell knew that Montoya continued to experience pain. Perhaps Dr. Gregory knew it, as she treated Montoya in May and June after the filling and prescribed him pain medication both times.

But Montoya points the Court to no evidence showing that Mitchell herself was aware of the pain in March, April, May, or early June. It was not until June 22, 2015, that, as the dental director, Mitchell received Montoya's grievance and responded to it via a memorandum to the Grievance Officers. In that June 22 memorandum, Mitchell noted that Montoya had been treated on May 11 and given pain medication, had had appointments rescheduled due to lockdowns and staffing shortages, had himself been a no-show on June 19, and had an appointment scheduled for June 24. Thus, Montoya argues, the memorandum shows that Mitchell was aware of Montoya's chronic pain, his repeated sick call requests, and the fact that his appointments were repeatedly rescheduled. (Dkt. 118 at 5.) This memorandum, however, also indicates that Mitchell knew that Montoya was now receiving pain medication, had been a no-show at his appointment just three days before, and had another appointment in two days. There is no evidence that Mitchell knew Montoya was not at fault for missing the June 19 appointment, nor that Mitchell failed to exercise a professional judgment by allowing the June 24 appointment to stand rather than pull Montoya in for immediate treatment. Montoya also has not pointed to evidence that Mitchell herself canceled or delayed the appointments. *See Ramirez*, 2018 WL 2118199, at *11 (noting that "the Seventh Circuit has long held that physicians should not be faulted for time delays beyond their control").

Montoya relies on *King v. Newbold*, 815 F. App'x 82 (7th Cir. 2020), to argue that Mitchell cannot avoid liability by claiming that she was not in charge of appointments (Dkt. 118 at 10), but that case actually helps Mitchell. In *King*, the defendant dental director knew that an oral surgeon had recommended the plaintiff for surgery, but the defendant delayed asking the medical director for a surgery referral for three weeks. *King*, 815 F. App'x at 84–85. The defendant offered no reason for her inaction, arguing "only that she was one of several dentists responsible for reviewing appointment requests." *Id.* at 85. The court held that summary judgment in favor of the defendant

19

was inappropriate because the defendant "*knew* of [the plaintiff's] need for treatment *independently* of his frequent requests for dental care." *Id.* (emphasis added). In contrast, in the case at bar, Montoya has not pointed to evidence that Mitchell subjectively knew of Montoya's need for treatment independently of the frequent requests for dental care, or that Mitchell knew of the requests for dental care before June 22, when she received the grievance and summarized Montoya's appointment history.

As for the period between Mitchell's June 22 memorandum and the September 28 extraction, once again Montoya does not point to evidence that Mitchell knew that Montoya's pain continued after his June 24 appointment, or that she was personally involved in his treatment at all.

Montoya argues that the Court may make an adverse inference against Mitchell as to her deliberate indifference because Mitchell did not attach the June 22 memorandum to her motion for summary judgment. (Dkt. 118 at 5 n.2.) The Court is not persuaded. Montoya cites no authority to support the notion that the Court should make an adverse inference here, and it would be inappropriate for the Court to make a credibility determination based on a party's failure to attach a document to a summary judgment brief, or even to make a credibility determination at all. *See Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (noting that "credibility disputes are for fact finders to resolve"). In addition, a party moving for summary judgment need only make a showing that she is entitled to judgment as a matter of law, and then it is the non-movant's burden to show a genuine dispute as to a material fact such that summary judgment is not warranted. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323; *Serfecz*, 67 F.3d at 596. That process occurred here: Mitchell provided the Court with her evidence, and Montoya responded by attaching additional evidence, the June 22 memorandum. The Court thus finds no malfeasance.

Mitchell is also entitled to judgment as a matter of law because Montoya has a causation problem. "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm" such as needlessly prolonged pain. *Williams v. Liefer*, 491 F.3d 710, 714–16 (7th Cir. 2007). Montoya asserts that his pain continued even after the September 28 extraction and continues to this day, and that the Motrin he was prescribed was not effective. He therefore offers insufficient evidence that any delay in treatment needlessly prolonged his pain because his pain has continued even after treatment. This is not a case like *Williams v. Liefer*, where the treatment immediately relieved the plaintiff's pain and a jury could find that the prior delay needlessly caused hours of additional pain. *Id.* at 716. Rather, here the extraction and medication have apparently failed to treat Montoya's pain, so a jury could not reasonably conclude that the delay of those treatments needlessly caused additional pain.

There is also insufficient evidence that Mitchell herself knew the treatment was ineffective and persisted in it. Without evidence indicating what kind of treatment Mitchell should have provided instead, a jury would be left to speculate about the proper treatment. Speculation, however, is not grounds to defeat summary judgment. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact."); *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 601 (7th Cir. 2019) (noting that a plaintiff cannot avoid summary judgment "with assumption or speculation").

In these circumstances—with insufficient evidence that Mitchell knew about Montoya's continuing pain, disregarded an obvious risk, substantially departed from professional standards,

or needlessly caused prolonged pain—Mitchell is entitled to judgment as a matter of law. The Court need not reach Mitchell's other arguments.

### Conclusion

Based on the foregoing, Montoya's motion to strike (Dkt. 120) is denied, and Mitchell's motion for summary judgment (Dkt. 113) is granted. This case is dismissed. Civil case terminated.

ENTERED:  3/28/24

_____
Nancy L. Maldonado
United States District Court Judge